```
            IN THE UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| RHODIA, INC.,<br><br>              Plaintiff,<br><br>    v.<br><br>WILLIAM BOLLINGER,<br><br>              Defendant. | Civil Action<br>No. 07-2677 (JBS)<br><br>**MEMORANDUM OPINION** |

**Simandle, District Judge**:

    1.  Plaintiff Rhodia Inc. ("Plaintiff" or "Rhodia"), in its capacity as sponsor and fiduciary of the Rhodia Inc. Flexoptions Medical Plan ("the Plan"), brings this action pursuant to 28 U.S.C. § 1132 (a)(3)(B)(ii), for equitable relief to enforce the terms of the Plan.  Specifically, Plaintiff seeks an equitable lien and constructive trust on funds Defendant William Bollinger ("Defendant"), Administrator of the Estate of Kyle Koskey ("the Estate"), recovered in settlement of a wrongful death action.  Kyle Koskey was a beneficiary of the Plan at the time of his injury and subsequent medical treatment.

    2.  Rhodia claims that the Plan provides it with a subrogation right to a portion of the funds Koskey's Estate recovered in an amount equal to what Rhodia spent on Koskey's medical benefits for the accident that caused Koskey's death and led to the settlement.  Plaintiff alleges that this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal

question jurisdiction) and 29 U.S.C. § 1132 (e)(1) (ERISA § 502(e)(1)) (providing exclusive original jurisdiction in federal district courts over certain ERISA claims).

3. Defendant filed this motion to dismiss in lieu of an answer, pursuant to Fed. R. Civ. P. 12(b)(1) and (6), arguing that this Court lacks subject matter jurisdiction over Plaintiff's claim and that the Complaint fails to state a claim on which relief may be granted as a matter of law.

3. A motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) can take on two very different forms depending on whether it is a facial attack on the complaint or a factual attack.

> The facial attack does offer similar safeguards to the plaintiff [as a 12(b)(6) motion does]: the court must consider the allegations of the complaint as true. The factual attack, however, differs greatly for here the trial court may proceed as it never could under 12(b)(6) or Fed. R. Civ. P. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction - its very power to hear the case - there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist.

Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977).

4. Although Defendant does not discuss whether it is making a facial or factual attack on jurisdiction, the Court shall assume it is a facial attack because Defendant argues that the Court lacks subject matter jurisdiction under 28 U.S.C. § 1132(a)(3)(B)(ii), which only provides jurisdiction over claims in equity and not simple contract or other legal claims. Thus, the Court may take the facts alleged in the Complaint as true for purposes of deciding this aspect of the motion.

5. The same is true for the Rule 12(b)(6) argument. "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007), and determine whether they "state a legal claim," Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990). The Court must "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" Phillips v. County of Allegheny, ___ F.3d ___ , No. 06-2869, slip op. at 15 (3d Cir. Feb. 5, 2008) (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

6. However, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, ___ U.S. ___, 127 S. Ct. 1955, 1964-1965 (2007) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)). "To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" Victaulic Co. v. Tieman, 499 F.3d 227, 234 (3d Cir. 2007) (quoting Twombly, 127 S. Ct. at 1965). Only the allegations in the complaint, matters of public record, orders, and exhibits attached to the complaint are taken into consideration. Chester County Intermed. Unit v. Pennsylvania Blue Shield, 896 F.2d 808, 812 (3d Cir. 1990).

7. Defendant argues that the Court lacks subject matter jurisdiction over Plaintiff's claim because the claim is not legally cognizable under 29 U.S.C. § 1132 (a)(3)(B)(ii), which provides for a plan fiduciary's right of action for equitable relief to enforce a provision of an ERISA plan. This Court disagrees, insofar as Rhodia seeks money in Defendant's

possession which belongs to Rhodia, that is, money paid allegedly by the tortfeasor for the medical care of Koskey.

8. The Plan has a "Subrogation/Reimbursement Rights" provision, which states:

> If your injury or illness was caused by the neglect of another person or party, that person or party may be responsible for your hospital or medical bills - for example, if you are injured in an automobile accident or on another's property.
>
> Since collecting payment for these expenses from a third party may take a long time, the plans will provide the appropriate benefits and then seek repayment from any settlement you may receive. You may be asked to sign a form that acknowledges the plans' right to be reimbursed and verifies you will help the plans secure their rights. If you bring a liability claim against a third party, benefits payable under the plans must be included in the claim. When the claim is resolved, you must reimburse the plans for the benefits provided. You are legally obligated to avoid doing anything that would prejudice the plan's right of reimbursement.

(Compl. Ex. A at 98.) As the Court reads it, this provision entitles Rhodia to make an equitable claim on money that comes into the possession of a beneficiary, or his estate, that represents the cost of medical care Rhodia paid for under the Plan.

9. The Court is focused on Rhodia's equitable interest in such funds because Rhodia's cause of action is premised on Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), which provides, in relevant part:

5

>   A civil action may be brought--
>
>   [. . .]
>
>   (3) by a participant, beneficiary, or fiduciary
>
>>   (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or
>>
>>   (B) to obtain other appropriate equitable relief
>>
>>>   (i) to redress such violations or
>>>
>>>   (ii) to enforce any provisions of this subchapter or the terms of the plan.

10.  The Court of Appeals has characterized the reach of ERISA § 502(a)(3) as follows:

>   The Supreme Court has held that the phrase "appropriate equitable relief" means only "those categories of relief that were *typically* available in equity" in the days of the divided bench, Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 210 (2002) (quoting Mertens v. Hewitt Assocs., 508 U.S. 248, 256 (1993) (original emphasis)). According to the Supreme Court, such relief includes "injunction, mandamus, and restitution, but not compensatory damages." Mertens, 508 U.S. at 256. Thus, a plaintiff seeking relief under ERISA § 502(a)(3) must tie that request to a form of relief typically available in equity.

Eichorn v. AT&T Corp., 484 F.3d 644, 654-55 (3d Cir. 2007). This Court, therefore, only has jurisdiction over this action if

6

Plaintiff is seeking "appropriate equitable relief," within the meaning of ERISA § 502(a)(3)(B), 29 U.S.C. § 1132(a)(3)(B).

> 11. As another court in this District has explained,
>
>> Under ERISA, a Plan fiduciary may institute an equitable action seeking restitution where money belonging to the Plan can clearly be traced to particular funds or property in the beneficiary's possession. See 29 U.S.C. § 1132(a)(3)(B)(providing that a fiduciary can bring an action for "appropriate equitable relief"); Sereboff v. Mid Atl. Med. Servs., 547 U.S. 356 (2006). Both the basis for the claim and the relief sought must be equitable in nature. [Id.] at 1874. A fiduciary who seeks to impose personal liability on a beneficiary seeks a legal, not an equitable remedy. Id.; See also Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 214 (2002)("for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession").

Digiacomo v. Prudential Ins. Co. of Am., 501 F. Supp. 2d 626, 634 (D.N.J. 2007).

>> The Supreme Court has explained that some forms of equitable relief – such as constructive trusts, equitable liens, or accounting for the profits derived from wrongly held property – include the payment of money. Great-West, 534 U.S. 204 at 213-14. As the Court explained in Great-West, however, these forms of relief are available in limited circumstances. "Almost invariably, suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages,' as that phrase has traditionally been applied, since they seek no more than compensation for loss resulting from the defendant's breach of legal duty." Id. at 210.

Eichorn, 484 F.3d at 655 n.6.

12.  "ERISA provides for equitable remedies *to enforce plan terms*, so the fact that the action involves a breach of contract can hardly be enough to prove relief is not equitable; that would make § 502(a)(3)(B)(ii) an empty promise."  Sereboff, 126 S. Ct. at 1874 (key distinction between Sereboff and Knudson is that fiduciary in Sereboff sought "to recover a particular fund from the defendant").

13.  As the Eleventh Circuit has explained, an action under 29 U.S.C. § 1132(a)(3)(B) is appropriate insofar as the underlying plan created a lien by agreement by identifying specific funds, distinct from the beneficiary's general assets, and a particular share of those funds from which the plan was entitled to seek recovery.  Popowski v. Parrot, 461 F.3d 1367, 1373 (11th Cir. 2006) (discussing Sereboff).  Rhodia here created such a lien because under the terms of the Plan, in case of an accident for which another may be liable "the plans will provide the appropriate benefits and then seek repayment from any settlement [the beneficiary] may receive," rather than from general assets, and the reimbursement would be for a particular share of the fund, that is the portion representing the benefits paid by Rhodia.  "If you bring a liability claim against a third party, benefits payable under the plans must be included in the

claim. When the claim is resolved, [the beneficiary] must reimburse the plans for the benefits provided."

14. Thus, insofar as any beneficiary under this plan recovers money for medical benefits representing money that Rhodia spent on the beneficiary's medical care, that money would be Rhodia's money, which the beneficiary merely holds as a trustee for Rhodia and which it must transfer to Rhodia as soon as the beneficiary receives those funds, pursuant to the Plan. See Sereboff, 126 S. Ct. at 1875. Although the Plan language may also entitle Rhodia to make a legal claim on funds that do not relate its expenditure of medical benefits, such a claim would not be an action in equity because it would represent a more general claim on assets rather than an attempt to recover its own money in the hands of Defendant.

15. Rhodia is making an equitable claim, permitted by the terms of the Plan, for "appropriate equitable relief" under 29 U.S.C. § 1132(a)(3)(B), providing this Court with subject matter jurisdiction over the case. Insofar as Rhodia seeks to recover money from settlement funds that represent the money it spent on Koskey's medical care, it is a claim in equity. Therefore, finding federal question jurisdiction under 28 U.S.C. § 1331, the Court shall deny the motion to dismiss pursuant to Rule 12(b)(1).

16. As to the 12(b)(6) motion, the Court must similarly deny the motion to dismiss this action for failure to state a

claim on which relief can be granted.  On the face of the Complaint, Plaintiff makes an equitable claim for money to which it allegedly has a subrogation right.  While it be inequitable to award money to Rhodia that Defendant did not recover, it is possible that some portion of the property Defendant received in settlement of the wrongful death action included money that belongs to Plaintiff, nothwithstanding New Jersey law.  See N.J. Stat. Ann. 2A:15-97, which provides:

> **Deduction of duplicate benefits**
>
> In any civil action brought for personal injury or death, except actions brought pursuant to the provisions of P.L.1972, c. 70 (C. 39:6A-1 et seq.), if a plaintiff receives or is entitled to receive benefits for the injuries allegedly incurred from any other source other than a joint tortfeasor, the benefits, other than workers' compensation benefits or the proceeds from a life insurance policy, shall be disclosed to the court and the amount thereof which duplicates any benefit contained in the award shall be deducted from any award recovered by the plaintiff, less any premium paid to an insurer directly by the plaintiff or by any member of the plaintiff's family on behalf of the plaintiff for the policy period during which the benefits are payable. Any party to the action shall be permitted to introduce evidence regarding any of the matters described in this act.

17.  Defendant alleges that Koskey's medical expenses, which were covered by Rhodia, were not recoverable by the Estate in the wrongful death action.  To avoid double recovery and reduce insurance costs, New Jersey law prevents insured plaintiffs from

seeking payment for costs for which they have already been compensated.

    18.  Thus, Defendant argues, the money Defendant placed in escrow prior to this action, and which Plaintiff now seeks, could not be the specific funds that belong to Plaintiff.  Defendant argues it never came into possession of such funds, as a matter of law.  If it had, this case could go forward.  But as it stands, Defendant claims, the property recovered in New Jersey is not money on which Plaintiff has an equitable claim under the Plan.

    19.  Further, Defendant argues, insofar as Plaintiff seeks reimbursement for the medical expenses it paid, it may pursue the tortfeasor itself, which has not been held accountable for them.  Rhodia is the party that incurred the medical expenses and, Defendant argues, it could not have settled Rhodia's claim on its behalf in the course of the Estate's wrongful death litigation.

    20.  Rhodia argues that the New Jersey statute does not apply in this case because ERISA pre-empts New Jersey law.  This Court disagrees, but finds that New Jersey law does not bar Rhodia's equitable subrogation claim.

    21.  Although ERISA pre-empts claims by plan participants and beneficiaries under N.J. Stat. Ann. 2A:15-97 because such claims are actually "claims for benefits" for which ERISA provides an exclusive remedy, see Levine v. United Healthcare

Corp., 402 F.3d 156, 163 (3d Cir. 2005), ERISA did not change the nature of state tort remedies available to civil plaintiffs in wrongful death actions unrelated to disputes with an ERISA plan. Thus, although claims for unjust enrichment by plan participants relying on this statute are completely preempted by their rights to recover under Section 502(a) of ERISA, that "preemption" does not render the statute invalid whenever it later interacts with an ERISA lawsuit; it merely makes the action removable and preempts a state law cause of action premised on the statute.

    22.  Specifically, ERISA allows a participant in an ERISA plan to bring a civil action to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B).  When a plan beneficiary brings an action in state court seeking to resist the plan's claim for reimbursement, invoking N.J. Stat. Ann. 2A:15-97, that beneficiary is actually bringing a claim "for benefits due," and federal courts have federal question subject matter jurisdiction even though no federal question is presented on the face of the complaint.  Levine, 402 F.3d at 163. Furthermore, such affirmative claims arising under N.J. Stat. Ann. § 2A:15-197 may not proceed against ERISA fiduciaries because they conflict with the express pre-emption provisions of ERISA.  Id. at 166.

23. The Supreme Court has held that "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." Aetna Health Inc, v. Davila, 542 U.S. 200, 209 (2004). The Supreme Court in Davila discussed the purposes of such pre-emption of state law civil enforcement: ERISA provides a comprehensive scheme for civil enforcement of the claims of plan beneficiaries and participants, creates an integrated system for enforcement, and provides a uniform regulatory regime over employee benefit plans, based exclusively in federal court. Subjecting ERISA plans to liability under state law in state courts for numerous, and conflicting, common law claims, in multiple jurisdictions, would undermine this uniform system of regulating the standards applicable to such plans and would slow the resolution of disputes between participants or beneficiaries and insurance providers.

24. No such concerns are present when applying New Jersey's law to determine the nature of the property that is in the possession of the Defendant in this equitable action. There is no attempt to undermine ERISA's civil enforcement mechanism by bringing a separate, state law cause of action, nor will the action be remanded to state court. There is no New Jersey cause of action asserted here.

25. Further, New Jersey's statute does not render the subrogation clause in the Plan invalid.[1] Rather, the plaintiff/fiduciary properly invokes a federal question on the face of the Complaint in this matter and this Court shall hear this matter, applying federal law to resolve the ERISA dispute if the terms of the Plan were properly invoked and Plaintiff has stated a claim on which relief can be granted.

26. However, New Jersey law apparently defines the property in Defendant's possession because it was acquired in a New Jersey state court action pursuant to New Jersey law and remains in an account in New Jersey. The pre-emption jurisprudence does not render the New Jersey limitation on recovery statute void for purposes of determining what property is in the beneficiary's possession as a result of state court litigation. In this equitable ERISA action by Rhodia, it is only entitled to money in Defendant's possession from that litigation, under the Plan, if that money represents the Estate's recovery of damages for what Rhodia paid for Koskey's medical care. Plaintiff has alleged that the money in Defendant's possession represents the money it paid for medical benefits. That allegation is, in some instances, consistent with N.J. Stat. Ann. § 2A:15-197, insofar

---

[1] But see Perreira v. Rediger, 169 N.J. 399, 403 (2001) (collateral source rule does not permit insurer, "who expends funds on behalf of an insured, to recoup those payments through subrogation or contract reimbursement when the insured recovers a judgment against a tortfeasor.").

14

as situations can exist in which New Jersey plaintiffs may recover funds in New Jersey courts representing the cost of medical benefits paid by their insurers.  See Perreira v. Rediger, 169 N.J. 399, 416 (2001) ("inclusion of subrogation and reimbursement provisions in health insurance contracts [is permitted only in] cases in which the collateral source rule does not apply, for example, a case in which choice of law principles require application of the law of a jurisdiction with a collateral source rule at variance from our own.").

27.  This Court reads Levine to say that ERISA pre-empts causes of action by an ERISA beneficiary against an ERISA plan based on N.J. Stat. Ann. § 2A:15-197, but it does not render the statute a nullity or interfere with New Jersey's right to restrict tort recoveries under its laws to only those losses the plaintiff actually incurred.  Thus, the pre-emption of such civil enforcement claims does not preclude this Court from examining the nature of the funds Defendant recovered in the state court wrongful death suit when the ERISA plan brings the equitable action, as in this case.

28.  Further, when an equitable claim to enforce an ERISA plan depends on whether the beneficiary received money in a tort action for medical benefits, the Court must dismiss the claim if the beneficiary never received such money.  Under the terms of the ERISA plan here, which Plaintiff is entitled to enforce

through this equitable action by virtue of 29 U.S.C. § 1132(a)(3)(B), Plaintiff may recover only that money which was paid to Defendant for the medical benefits that Plaintiff funded. The equitable theory of the case is that some portion of money that came to Defendant in the wrongful death suit actually belongs to Plaintiff. As the Plan states, "If you bring a liability claim against a third party, benefits payable under the plans must be included in the claim. When the claim is resolved, [the beneficiary] must reimburse the plans for the benefits provided." If state law prohibits a plaintiff's claim for medical benefits paid by his or her own insurance, there would be nothing to which Rhodia could attach its equitable lien or constructive trust and the Court could not grant relief. Similarly, if state law precludes the wrongful death plaintiff from seeking medical benefits paid for by another, then that other, Rhodia, has no equitable right to money that came into the litigant's hands to compensate for other losses suffered by the beneficiary's estate.

29.  But, on the face of the Complaint, Rhodia has alleged that the money in Defendant's possession represents money that Rhodia expended for medical benefits. On a Rule 12(b)(6) motion, the Court is obliged to credit a plaintiff's factual allegations, "on the assumption that the allegations in the complaint are true (even if doubtful in fact)" under Twombly, 127 S. Ct. at 1965.

To actually determine whether Defendant holds funds obtained in reimbursement of the decedent's medical expenses includes an examination of facts outside the pleadings, which is not permitted in a Rule 12(b)(6) motion unless and until it has been converted to a motion for summary judgment which conversion has not occurred here procedurally.  Rhodia is entitled to seek money Defendant recovered, consistent with New Jersey law, in limited situations, and it is conceivable that Rhodia would recover some portion of that fund in equity.  Only after discovery could the Court determine whether this is a situation in which the subrogation claim against the Estate will succeed in equity.

29.  Therefore, the Court shall deny the motion to dismiss for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6).  An appropriate Order shall be entered.


**March 20, 2008**                                    **s/ Jerome B. Simandle**
Date                                                  Jerome B. Simandle
                                                      U.S. District Judge